# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Shawn Pritchett,

     Petitioner

v.

Ronald Oliver, et al.,

     Respondents

Case No.: 2:17-cv-01694-JAD-DJA

**Order Denying Petition for
Habeas Relief and
Closing Case**

[ECF No. 42]

     Petitioner Shawn Pritchett is serving two life sentences without the possibility of parole for the murder of Larry Thomas.  He brings this counseled third-amended habeas corpus petition under 28 U.S.C. § 2254 to challenge his 2010 Nevada state-court convictions for conspiracy to commit murder, first-degree murder with the use of a deadly weapon, and robbery with the use of a deadly weapon.[1]  Pritchett alleges that his trial counsel was ineffective and the trial court erred in admitting prior-bad-act evidence and denying his *Batson* challenge.[2]  Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Pritchett's third-amended petition, deny Pritchett a certificate of appealability, and close this case.

---

[1] ECF No. 22-8.

[2] ECF No. 42.

**Background**

**A.       The facts underlying Pritchett's convictions**[3]

Married couple Stephanie and Larry[4] Thomas lived in Las Vegas, Nevada with their five children.  Stephanie worked with Pritchett and, in the summer of 2004, Pritchett moved in with Stephanie and Larry.  Stephanie's brother, William Peters, believed that Stephanie and Pritchett were having an affair and, in December 2005, Peters confronted his sister about his suspicions. Pritchett moved out of Stephanie and Larry's home soon after.

In March 2006, Stephanie and Larry agreed to go to marriage counseling.  However, in early April 2006, Larry told a friend that he was going to confront Stephanie about some charges on their joint credit card having to do with Pritchett.  Depending on the outcome of his discussion with Stephanie, Larry was going to decide whether to leave the relationship.  Then, on the morning of April 13, 2006, Larry told his secretary that "he intended to cut Stephanie off" financially.

A few days later, Larry and Stephanie's daughters contacted Peters to tell him that Larry was missing.  Peters called the Henderson Police Department.  Officer William Berry received the call and contacted Stephanie, who told Officer Berry that Larry came home on April 13, 2006, took some of his clothes, and left.  Stephanie indicated that she had not seen or heard from him, but she told Officer Berry that she had spoken to someone in California who reported that he had seen Larry.  Officer Berry eventually talked Stephanie into filing a missing-persons

---

[3] These facts are taken from the trial transcripts.  ECF Nos. 18, 18-2, 19, 19-1, 19-2, 20, 21-2, 22-4.  For simplicity's sake, I cite to these exhibits generally for this entire fact section.  I make no credibility findings or other factual findings regarding the truth or falsity of this summary of the evidence from the state court.  My summary is merely a backdrop to my consideration of the issues.

[4] Because Stephanie and Larry share a last name, I refer to them by their first names throughout this order.  No disrespect is intended by doing so.

report.  According to Officer Berry, "Stephanie really had no concern about [Larry], but yet also had no information about his whereabouts, where he'd gone, what he was doing, anything." Notably, there were no outgoing phone calls on Larry's cellphone after April 13, 2006, at 11:03 p.m.

On May 14, 2006, Larry's decomposing body was found in a remote area near Mountain Pass, California.  An autopsy revealed that Larry's cause of death was crush injuries to his head and chest, and the coroner determined that Larry's manner of death was homicide.  Stephanie, who was the beneficiary of Larry's life-insurance policies and pension, attempted to claim these benefits just days after Larry's body was found.  She also started to make allegations that Larry had abused her, though none of the couple's friends or relatives witnessed any abuse and nobody heard Stephanie make similar allegations before Larry's death.

Pritchett was interviewed by law enforcement and reported that he was at the Village Pub on the night Larry went missing.  He relayed that he received a phone call from Stephanie, who had been at her mother's house with her children, between 11:00 p.m. and midnight that evening. However, Village Pub employee Christine Griffin testified that Pritchett was not there that night—Pritchett had asked her to lie and say he was if anyone asked.

Detective Michael Condratovich testified that Pritchett's cellphone was pinging on a cell tower close to Larry and Stephanie's home from 8:49 p.m. on April 13, 2006, until 1:17 a.m. on April 14, 2006.  After 1:17 a.m., Pritchett's cell phone was pinging on cell towers heading to Mountain Pass, California, and then back to Las Vegas.  And to make matters worse for Pritchett, one of his friends, Dale Baker, Jr., testified that before Larry's death, Pritchett was surveilling Larry's whereabouts and told him that he wanted to kill Larry.  Stephanie's brother-in-law Albert McCue testified that Pritchett told him that, on the night of Larry's death, he had

followed Larry, ambushed him, and then thrown his body in the back of a truck.  Jennifer

McCue, Albert's wife, testified that before Larry's body was found, Pritchett told Albert that

Larry was killed by blunt trauma to the head.  After Larry's death, Pritchett pawned several

pieces of jewelry, one of which Larry's secretary identified as belonging to Larry.  There was

also testimony that Pritchett dismantled Larry's truck and sold the parts.

Pritchett's defense at trial was that Stephanie killed Larry and Pritchett was merely an

accessory after the fact.  Stephanie had previously pled guilty to killing Larry in concert with

Pritchett, and defense counsel tried to introduce evidence of just Stephanie's guilt through the

testimony of Patty Peterson, Stephanie's financial advisor.  But that plan backfired because it

opened the door for the prosecution to clarify that Stephanie's guilty plea included the fact that

she planned the crime with Pritchett.

**B.     Procedural history**

Pritchett was convicted of conspiracy to commit murder, first-degree murder with the use

of a deadly weapon, and robbery with the use of a deadly weapon.[5]  He was sentenced to two

consecutive life sentences without the possibility of parole.[6]  Pritchett appealed, and the Nevada

Supreme Court affirmed.[7]  Pritchett filed a state petition for post-conviction relief.[8]  The state

court denied the petition,[9] and the Nevada Supreme Court affirmed.[10]

---

[5] ECF No. 22-8.

[6] *Id.*

[7] ECF No. 22-15.

[8] ECF Nos. 23, 23-2.

[9] ECF No. 23-8.

[10] ECF No. 23-12.

4

Pritchett dispatched his federal habeas corpus petition on or about June 16, 2017.[11]  I appointed counsel for Pritchett,[12] and he filed counseled first-, second-, and third-amended petitions.[13]  After Pritchett's third-amended petition added a new claim—ground 8—that his trial counsel violated his Sixth Amendment rights by conceding his guilt, I sua sponte entered a *Rhines* stay to allow him to return to state court and exhaust that claim,[14] so this case was stayed from June 17, 2019, until May 21, 2021.[15]  During that time, Pritchett's second state habeas petition was denied, and the Nevada Supreme Court affirmed the denial on appeal.[16]  Once the *Rhines* stay was lifted, Respondents moved to dismiss the third-amended petition, but I granted Pritchett's request to strike that motion.[17]  Respondents then renewed their motion to dismiss the third-amended petition.[18]  I granted the motion in part, (1) dismissing ground 8 as time barred, (2) finding grounds 1(a) through 1(e) to be technically exhausted but procedurally defaulted, and (3) finding grounds 2, 4, 6, and 7 to be unexhausted.[19]  I deferred consideration of whether Pritchett could overcome the procedural default of grounds 1(a) through 1(e) until his petition was fully briefed.  Pritchett chose to abandon his unexhausted grounds, so I dismissed grounds 2, 4, 6, and 7.[20]  Pritchett's third-amended petition now proceeds on three claims:

---

[11] ECF No. 7.

[12] ECF No. 6.

[13] ECF Nos. 12, 32, 42.

[14] ECF No. 41.

[15] ECF Nos. 41, 46.

[16] ECF Nos. 63-9, 44-1.

[17] ECF Nos. 66, 75.

[18] ECF No. 76.

[19] ECF No. 93.

[20] ECF No. 95.

- Ground one: trial counsel was constitutionally ineffective by:

   a. failing to adequately investigate alternative defenses in Pritchett's case;

   b. failing to investigate mitigating circumstances at sentencing;

   c. failing to present DNA evidence that was favorable to Pritchett;

   d. failing to hire a digital-forensic expert to refute the prosecution's cell-tower evidence;

   e. failing to challenge the admissibility of Detective Condratovich's testimony regarding cell-tower-location data; and

   f. opening the door to Stephanie's admission that she'd helped Pritchett kill Larry;

- Ground three: Pritchett was denied a fair trial because the trial court allowed prior-bad-acts evidence of his affair with Stephanie and his incarceration before trial to be used against him; and

- Ground five: the trial court's denial of Pritchett's *Batson* challenge violated the constitution.

**Discussion**

**A.     Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)**

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may grant habeas relief with respect to that claim only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

6

the State court proceeding."[21]   A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[22]   And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[23]   Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[24]   The "objectively unreasonable" standard is difficult to satisfy;[25] "even clear error will not suffice."[26]

Habeas relief may be granted only if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[27] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[28]   "So long as fairminded jurists could disagree on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[29]   AEDPA "thus imposes a highly deferential standard for

---

[21] 28 U.S.C. § 2254(d).

[22] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[23] *White v. Woodall*, 572 U.S. 415, 425–27 (2014).

[24] *Id*. at 425–26.

[25] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[26] *Wood v. McDonald*, 575 U.S. 312, 316 (2015) (per curiam) (cleaned up); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[27] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[28] *Id*. at 103.

[29] *Id*. at 101 (cleaned up).

7

evaluating state-court rulings, . . . and demands that state-court decisions be given the benefit of the doubt."[30]

If a federal district court finds under § 2254 that the state court committed an error, the district court must then review the claim de novo.[31]  The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[32] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[33]

**B.    The court will not consider evidence that wasn't presented to the Nevada courts.**

Throughout his petition, Pritchett requests that I consider evidence raised for the first time in federal court.  Respondents identify this evidence as:

- ECF No. 13-1, Ex. 1, Notes Regarding Jo Henry (September 28, 2004);
- ECF No. 13-2, Ex. 2, Henderson Police Department Affidavit for Warrant;
- ECF No. 13-8, Ex. 7, Henderson Police Department Voluntary Consent to Search (May 3, 2006);
- ECF No. 13-9, Ex. 8, Henderson Police Department Voluntary Consent to Search
- ECF No. 13-10, Ex. 9, Autopsy Report (May 19, 2006);
- ECF No. 13-11, Ex. 10, Evidence/Property Report (May 25, 2006);
- ECF No. 13-12, Ex. 11, Police Report (June 4, 2006);
- ECF No. 16-2, Ex. 18, Police Report-Investigation Portion (April 13, 2007);
- ECF No. 16-3, Ex. 19, Las Vegas Metropolitan Police Department Forensic Laboratory Report of Examination Biology/DNA (July 5, 2007);
- ECF No. 22-10, Ex. 63, Richmond Journal of Law and Technology; The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of a Cellular Phone (January 2011);
- ECF No. 33-1, Ex. 90, Envista Forensics, PT&C Forensic Consulting Services, P.A., Spencer J. McInvaille, CWA, CTNS, Digital Forensic Technician, CV (March 30, 2018);
- ECF No. 33-2, Ex. 91, Declaration of Michael Conlon (June 7, 2018);

---

[30] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (cleaned up).

[31] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[32] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[33] 28 U.S.C. § 2254(e)(1).

- ECF No. 33-3, Ex. 92, Envista Forensics, PT&C Forensic Consulting Services, P.A., Spencer J. McInvaille, CWA, CTNS, Digital Forensic Technician, Report;
- 32-1, Ex. 1: Order, Thomas Crump v. E.K. McDaniel, et al. (October 17, 2008).

The Supreme Court recently held in *Shinn v. Ramirez* that "a federal habeas court may not . . . consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the prisoner can satisfy 28 U.S.C. 2254(e)(2)'s requirements.[34] Under that subsection, the court must not consider new evidence if the petitioner has "failed to develop the factual basis of a claim in state-court proceedings" unless the petitioner shows that "the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence;" and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense."[35]

Pritchett attempts to circumvent § 2254(e) by claiming that it wasn't his fault that he was unable to develop the record in state court—he asserts that he "diligently attempted to present the factual bases for his claims to the state courts" when he "twice motioned this Court to allow him to return to the state court to present his unexhausted claims, as well as the factual bases for those claims."[36] Pritchett claims that these belated attempts to raise these issues constitute a "reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court."[37] But I denied Pritchett's first motion to stay this case because his efforts

---

[34] *Shinn v. Ramirez*, 592 U.S. 366, 382 (2022).

[35] 28 U.S.C. § 2254(e)(2).

[36] ECF No. 110 at 11.

[37] *Id.* (quoting *Williams v. Taylor*, 529 U.S. 420, 435 (2000)).

would be futile: "the claims that Pritchett wishes to present to the state court are undisputedly procedurally barred under current Nevada law."[38]  And I denied the second because Pritchett essentially sought an indefinite stay to wait for the Supreme Court of Nevada to decide a case that may have let him exhaust those claims, which conflicts with the federal courts' mandate to restore finality to state-court convictions as soon as practicable.[39]  The Ninth Circuit has interpreted *Ramirez* to hold that "a failure to present evidence to the state court in compliance with state procedural rules counts as a failure to develop the factual basis of a claim in state court" under § 2254(e)(2).[40]  So because Pritchett's attempts to exhaust in state court would be plainly procedurally barred, and because he otherwise doesn't meet § 2254(e)(2)'s strict requirements to allow development of the record in federal court, I decline to consider any new evidence that was not raised before the state's courts.

## C.     All of Pritchett's ground-one ineffective-assistance claims are either procedurally defaulted or meritless.

Ground one of Pritchett's third-amended petition alleges that his trial counsel was ineffective.  The right to counsel embodied in the Sixth Amendment provides "the right to the

---

[38] ECF No. 84 at 1.

[39] ECF No. 109.  *See also Ramirez*, 596 U.S. at 390 (noting that "a federal court may *never* needlessly prolong a habeas case, particularly given the essential need to promote the finality of state convictions").  And the Supreme Court of Nevada did decide the case that Pritchett wanted to wait on, but it did not go his way.  In *Coca v. State*, 545 P.3d 106 (Nev. 2024) (table disposition), the court dismissed the petitioner's attempts to overrule precedent holding that postconviction counsel's ineffectiveness is not cause for overcoming a procedural default in non-capital cases.  Overturning that precedent would have been the only way that Pritchett could have returned to state court to exhaust his claims, so there is no merit to Pritchett's contention that he should have been able to develop the factual record for his claims in state court.

[40] *McLaughlin v. Oliver*, 95 F.4th 1239, 1249 (9th Cir. 2024) (cleaned up).

effective assistance of counsel."[41]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[42]  In *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[43] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[44]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[45]  Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[46]  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[47]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[48]

If a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult.[49]

---

[41] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[42] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[43] *Id.* at 690.

[44] *Id.* at 694.

[45] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[46] *Strickland*, 466 U.S. at 689.

[47] *Richter*, 562 U.S. at 104.

[48] *Id.*

[49] *See id.* at 104–05.

1 *Strickland* and § 2254(d) are highly deferential, and when the two apply in tandem, review is

2 doubly so.[50]  "When § 2254(d) applies, the question is not whether counsel's actions were

3 reasonable [but] . . . whether there is any reasonable argument that counsel satisfied *Strickland*'s

4 deferential standard."[51]

5         **1.**        ***Pritchett cannot overcome procedural default for grounds 1(a) through 1(e).***

6         I previously determined that grounds 1(a) through 1(e) were technically exhausted

7 because they would be procedurally barred in the state courts.[52]  I deferred a decision on whether

8 Pritchett can demonstrate cause and prejudice to overcome the procedural defaults of these

9 grounds until after the parties answered and replied.[53]

10         The United States Supreme Court's decision in *Martinez v. Ryan* counsels that a

11 petitioner can demonstrate cause to potentially overcome the procedural default of a claim of

12 ineffective assistance of trial counsel by demonstrating that either (a) he had no counsel during

13 the state postconviction proceedings or (b) such counsel was ineffective.[54]  To demonstrate

14 prejudice under *Martinez*, the petitioner must show that the defaulted claim of ineffective

15 assistance of trial counsel is a "substantial" claim.[55]  A claim is "substantial" for purposes of

16 *Martinez* if it has "some merit."[56]  This standard does not require a showing that the claim will

17 succeed but instead only that its proper disposition could be debated among reasonable jurists.[57]

18

---

19 [50] *Id.* at 105; *accord Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).

  [51] *Richter*, 562 U.S. at 105.

20 [52] ECF No. 61 at 5.

21 [53] *Id.*

  [54] *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).

22 [55] *Id.*

23 [56] *Id.*

  [57] *See generally Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003).

The principal issues presented here[58] are (1) whether Pritchett's state postconviction counsel was ineffective in raising this claim in the state court; (2) whether Pritchett's ineffective-assistance-of-trial-counsel claim is substantial, and if so; (3) whether, on the merits, Pritchett was denied effective assistance of trial counsel.[59]  On all such issues, this court's review is *de novo*.[60]

### a.     Ground 1(a)—failure to investigate possible defenses

In ground 1(a), Pritchett alleges that his trial counsel failed to adequately investigate defenses, including investigating other plausible suspects who had a motive to kill Larry.[61]  Pritchett alleges that his trial counsel should have investigated individuals employed by Larry's former employer, the College of Southern Nevada (CSN).[62]

During Pritchett's post-conviction evidentiary hearing, Pritchett's first-chair trial counsel testified that Pritchett had asked him to pursue a theory that "some individuals at the CSN were involved in" Larry's murder and disappearance.[63]  Pritchett believed "that there [was] some sort of conspiracy involving CSN" after the school was investigated for fraud and theft, and "since

---

[58] It is not disputed (1) that a state postconviction proceeding in the state court was an initial-review collateral proceeding for purposes of *Martinez*, or (2) that Nevada procedural law sufficiently requires an inmate to present a claim of ineffective assistance of trial counsel for the first time in that proceeding for purposes of applying the *Martinez* rule.  *See generally Rodney v. Filson*, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

[59] *See, e.g.*, *Atwood v. Ryan*, 870 F.3d 1033, 1059–60 (9th Cir. 2017); *Detrich v. Ryan*, 740 F.3d 1237, 1243–46 (9th Cir. 2013).

[60] *See Ramirez v. Ryan*, 937 F.3d 1230, 1243 (9th Cir. 2019); *Atwood*, 870 F.3d at 1060 n.22.

[61] ECF No. 42 at 12.

[62] *Id*. at 12–16.  Pritchett also argues that, had counsel interviewed Larry's friend Mike Conlon, he "would have testified that [Larry] had been engaging in sexual relationships with men who were strangers he met on the internet," which may have given counsel alternate suspects to investigate.  *Id*. at 14.  He also points to several other potential witnesses that could point to other people with motive to kill Larry, and inconsistencies with the police's investigation into Larry's death. But none of that information or evidence was presented to the state courts, so I don't consider it and limit this analysis to the CSN theory. *See supra* pp. 8–10; ECF No. 102 at 14–15.

[63] *Id*. at 42–43, 50.

CSN was the last place that Mr. Thomas had been seen alive that maybe . . . these people at CSN kidnapped, killed him, and dumped his body."[64]  So, even though first-chair counsel thought the theory was "absurd," he moved for a continuance "on the eve of the trial date" because he "thought that [he] needed some additional time to prepare an effective defense for Mr. Pritchett," including to investigate Pritchett's CSN theory.[65]

The trial court denied counsel's motion, and counsel testified that even if had been able to investigate the CSN theory, he believed the "theory of accessory after the fact . . . to be by far the most plausible and believable in comparison to the other theories."[66]  Pritchett's second-chair counsel also testified that "the best possible defense was to present an accessory after the fact defense as opposed to any of . . . Pritchett's theories about how this killing could have occurred" because "there was no way of getting around . . . Pritchett's behavior after the murder."[67]

Pritchett fails to demonstrate prejudice stemming from his trial counsel's lack of an investigation of suspects at CSN because the record is devoid of any evidence that such an investigation would have provided fruitful information.  Pritchett also fails to demonstrate any deficiency on the part of his trial counsel.  I defer to Pritchett's trial counsel's assessment that an accessory-after-the-fact defense was the best one available to Pritchett given the circumstances of the case, and that the CSN theory was not a viable or better defense than what they landed on. Indeed, due to the overwhelming evidence of Pritchett's involvement after the murder—pawning Larry's jewelry and dismantling and selling parts of Larry's truck—accusing someone unconnected with Pritchett would have been nonsensical.  Thus, Pritchett's trial counsel soundly

---

[64] *Id*. at 51, 64.

[65] *Id*. at 42–43, 50.

[66] *Id*. at 51, 54, 57.

[67] ECF No. 23-7 at 17, 21, 24.

decided that presenting an accessory-after-the-fact defense was the best option for Pritchett to argue his innocence of the murder charge.  Because Pritchett's ineffective-assistance claim is not substantial under *Strickland*, Pritchett fails to demonstrate requisite prejudice under *Martinez* to overcome the procedural default of ground 1(a), and I dismiss it.

### b.    *Ground 1(b)—failure to investigate mitigating factors for sentencing*

In ground 1(b), Pritchett alleges that his trial counsel failed to investigate mitigating evidence for his sentencing, including evidence portraying Larry as a volatile and violent man, which would have portrayed Pritchett as protecting Stephanie from Larry's domestic violence.[68] When challenging counsel's actions in failing to present mitigating evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*."[69]

First, it is not readily apparent that evidence of Larry's prior violent behavior towards Stephanie would have fallen into the category of mitigating evidence for Pritchett because this evidence would not tend to reduce Pritchett's level of culpability.[70]  Second, even if this evidence falls within the category of mitigating evidence, I am unpersuaded that this apparent motive for killing Larry would have reduced Pritchett's sentence.  This evidence could have been used to call into question the prosecution's narrative that Pritchett murdered Larry due to his own relationship with Stephanie.  But Pritchett fails to demonstrate that an alleged motive to save his girlfriend from her abusive husband would have diminished his culpability given Pritchett's

---

[68] ECF No. 42 at 16–18.

[69] *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003).

[70] *See Mitigation of Punishment*, Black's Law Dictionary (11th ed. 2019); *see also* Nev. Rev. Stat. § 200.035 (listing valid mitigating circumstances for first-degree murder).

deliberate actions prior to the murder, including surveilling Larry at his job; the violent beating that resulted in Larry's death; and Pritchett's calculated actions to conceal the murder.  So because Pritchett's ineffective-assistance claim is not substantial under *Strickland*, Pritchett fails to demonstrate requisite prejudice under *Martinez* to overcome the procedural default of ground 1(b).  Ground 1(b) is thus dismissed.

### c.   Ground 1(c)—failure to present DNA evidence

In ground 1(c), Pritchett alleges that his trial counsel failed to present favorable DNA evidence found on Larry's body that didn't definitively match Pritchett's DNA.[71]  During the post-conviction evidentiary hearing, Pritchett's first-chair trial counsel testified that "the Metro Crime Forensic Laboratory Report" showed that fingernail clippings were taken from Larry during his autopsy and the "clippings had characteristics of a possible [DNA] mixture," but that the DNA from those clippings "did not definitively come back to [Stephanie] or Mr. Pritchett."[72] He explained that he "did not independently seek to have [the laboratory report] admitted into evidence" even though the prosecution did not admit it.[73]  He also decided that he did not need to obtain a DNA expert because he did not "recall any issues involved in this case where a DNA expert might have been of assistance."[74]

Because the DNA found under Larry's fingernails could not be definitively traced to Pritchett, that evidence was at least mildly favorable to his defense.  But because the DNA report was inconclusive, it did not raise sufficient doubt about Pritchett's innocence.[75]  Moreover,

---

[71] ECF No. 42 at 18.

[72] ECF No. 23-7 at 67–69.

[73] *Id.*

[74] *Id.*

[75] *Cf. Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999) ("A lawyer who fails adequately to investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual

1    Pritchett's defense was that Stephanie killed Larry and Pritchett assisted her after the murder.

2    Because the DNA found under Larry's fingernails could not be definitively traced to Stephanie

3    either, seeking to admit the DNA report would not have furthered Pritchett's defense theory.

4    Because Pritchett's ineffective-assistance claim is not substantial under *Strickland*, Pritchett fails

5    to demonstrate requisite prejudice under *Martinez* to overcome the procedural default of ground

6    1(c).  Ground 1(c) is dismissed.

7              **d.    Ground 1(d)—failure to hire a digital-forensics expert**[76]

8              In ground 1(d), Pritchett alleges that his trial counsel was ineffective for failing to hire a

9    digital-forensic-cellular expert to refute the prosecution's cell-tower evidence.  At trial, Detective

10   Condratovich testified that, based on the cell-site records that he received from Sprint Nextel,

11   Pritchett was located at the Thomases' house the night that Larry went missing and was then at

12   the scene where Larry's body was found.[77]  He also averred that Pritchett was located near

13   Larry's place of work on several occasions in the months leading up to Larry's murder.[78]

14   Pritchett's counsel did not retain an expert to counter this testimony.

15             During the post-conviction evidentiary hearing, Pritchett's first-chair trial counsel

16   testified that he would have consulted an expert on the cell-site evidence if he "didn't feel that

17   [he] understood it correctly," but in this case, he did not hire an expert because he "felt

18

19

20   innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the
     verdict, renders deficient performance.").

21   [76] Pritchett asks that I review a report prepared for this case by Spencer J. McInvaille, a digital-
22   forensic examiner and cellular analyst, when evaluating this ground.  *See* ECF No. 33-3.  But
     that report has not been presented to the state courts, *see supra* pp. 8–10, so I do not consider it.

23   [77] ECF No. 21-1 at 44–45.

     [78] *Id.* at 141–48.

comfortable with the documentation that had been presented to [him]."[79]  Pritchett's first-chair

trial counsel elaborated:

> [A] lot of times what we do is, you know, we receive records from all different sources.  And sometimes we're very familiar with the records.  We understand the records.  They make sense.  And sometimes we don't.  And frequently during the course of the case we become familiar.  We believe we learn, you know, what this means and what that means.  And my best guess at this point or my assumption is that we simply believed we could - - we understood them.  And that's why not.  And you know, generally, you know, you can't get experts appointed on every single [case]."[80]

When evaluating the deficiency prong of this ineffective-assistance claim, I must defer to

Pritchett's trial counsel's explanation for why he did not obtain an expert witness to dispute the

prosecution's cell-tower-location testimony.  And here, Pritchett's trial counsel soundly testified

that he was able to understand the cell site records without an expert, so he was able sufficiently

expose defects in Detective Condratovich's testimony during cross-examination.[81]  As for

prejudice, Pritchett contends that "[h]ad trial counsel hired an expert, he could have educated the

jury about the unreliability of the detective's analysis and testimony."[82]  But, based on the

evidence that I am permitted to consider, Pritchett fails to demonstrate that Detective

Condratovich's testimony was unreliable or capable of being contradicted.[83]  Accordingly,

because Pritchett's ineffective-assistance claim is not substantial under *Strickland*, Pritchett fails

---

[79] ECF No. 23-7 at 31–32.

[80] *Id*. at 65.

[81] *See Richter*, 562 U.S. at 111 (explaining that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense").

[82] ECF No. 110 at 29.

[83] *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation.").

to demonstrate requisite prejudice under *Martinez* to overcome the procedural default of ground 1(d).  Ground 1(d) is dismissed.

### e.    Ground 1(e)—failure to challenge the admissibility of testimony

#### i.    Condratovich's testimony and defense counsel's belated objection

At trial, Detective Condratovich testified that he obtained the cell-tower data used to pinpoint Pritchett's location by compiling the cell-site record data supplied by the telephone company, providing that data to an analyst to make a chart, checking that chart for accuracy, and then going "through and us[ing] the coordinates supplied by the telephone company to identify the exact location of the cell towers" and plotting those locations on a map.[84]  After approximately an hour of that testimony, Pritchett's trial counsel objected, and a bench conference was held:

| | |
|---|---|
| Defense counsel: | Your Honor, the objection is lack of foundation of personal knowledge as to the location of the cell towers.  I don't know that that's been established through this officer that he knows where the cell towers are. |
| The Court: | Oh, my God, after an hour of testimony about this. |
| Prosecutor: | Yeah, I mean, you agreed to admit the diagrams so like now he's just testifying to the diagram, but the records will be what the GPS locations on the - - |
| The Court: | And they came in from the custodian of records from the companies? |
| Prosecutor: | Correct. |
| Defense counsel: | Yeah, but without somebody from the company's identifying where these are, I don't think that this witness - - |
| The Court: | From the records that are in evidence. |

---

[84] *Id*. at 116, 141–42.

| | |
|---|---|
| Prosecutor: | Yeah, we put in the record that this is [inaudible] with the latitude and longitude of each one of these locations. You can Google Earth it, and you'll get them all. |
| The Court: | He's summarizing evidence. |
| Prosecutor: | Correct. |
| The Court: | That's already in, so . . . |
| Defense counsel: | Our objection is that this witness doesn't - - that he lacks personal knowledge of the location of these cell towers. |
| The Court: | Okay.  So I mean, at this point, he doesn't understand that he's really summarizing the information that he pulled from the records provided by the companies, which include the cell tower information as well as all of the phone calling information - - |
| Prosecutor: | As well as the location of these cell towers. |
| The Court: | - - all of which is in evidence. |
| Prosecutor: | Correct. |
| Defense counsel: | Is he the one who took the longitude and latitude to the numbers and came up with the determination of where the tower - - |
| Prosecutor: | Verified all that information to and has submitted and affirmed as he testified that that information was correct as it was placed on the map. So, yes, he's testified to those - - or if you want me to, we'll - - on a Google a map, and we'll do it right in front of the jury and just start putting the latitude and longitude, but . . . |
| The Court: | I don't plan to be here at midnight, I'm just saying. Okay. At this point based on all of the documents and information that's already in evidence and it did come in from the actual phone companies properly established through their records, I'm going to overrule the objection. Go on.[85] |

---

[85] *Id*. at 178–80.

1

2

        ***ii.     Pritchett cannot show a substantial ineffective-assistance claim on these facts.***

3          Nevada law requires a party to provide pretrial written notice of any expert witness.[86]  An

4  expert witness is defined as someone having "scientific, technical or other specialized knowledge

5  [that] will assist the trier of fact to understand the evidence or to determine a fact in issue."[87]

6  Contrarily, a lay witness may testify to opinions or inferences that are "rationally based on the

7  perception of the witness; and . . . helpful to a clear understanding of the testimony of the witness

8  or the determination of a fact in issue."[88]  According to Nevada law, "the key to determining

9  whether testimony about information . . . constitutes lay or expert testimony lies with a careful

10  consideration of the substance of the testimony."[89]  So the court must ask whether "the testimony

11  concern[s] information within the common knowledge of or capable of perception by the average

12  layperson" or if it requires "some specialized knowledge or skill beyond the realm of everyday

13  experience."[90]

14          Pritchett fails to demonstrate that Detective Condratovich's testimony amounted to expert

15  testimony.  Detective Condratovich testified that he compiled the cell-site data, charted the data,

16  and plotted the data on a map.[91]  This testimony does not rise to the level of "scientific, technical

17  or other specialized knowledge" under Nevada law.[92]  Since an objection to the alleged expert

18

---

19  [86] Nev. Rev. Stat. § 174.234(2).

[87] Nev. Rev. Stat. § 50.275.

20  [88] Nev. Rev. Stat. § 50.265 (cleaned up).

21  [89] *Burnside v. State*, 352 P.3d 627, 636 (Nev. 2015) (cleaned up).

[90] *Id.*

22  [91] ECF No. 21-2 at 116, 141–42.

23  [92] *See Burnside*, 352 P.3d at 632 (holding that while "the cell phone company employee's testimony related to how cell phone signals are transmitted constituted expert testimony because it required specialized knowledge[,] . . . a police officer's testimony about information on a map

1  testimony would have been overruled, Pritchett's trial counsel's failure to make such an

2  objection did not amount to ineffective assistance of counsel.  Because Pritchett's ineffective-

3  assistance claim is not substantial under *Strickland*, ground 1(e) is dismissed.

4

5       **2.**     **Trial counsel were not ineffective when they opened the door to statements about Stephanie's guilty plea (Ground 1(f)).**

6       **a.**     **Patty Peterson's trial testimony and counsel's postconviction testimony**

7       In ground 1(f), Pritchett alleges that his trial counsel were ineffective when they opened

8  the door to the statement that Stephanie helped him kill Larry.[93]  Stephanie's financial advisor

9  Patty Peterson was called as a prosecution witness at Pritchett's trial and testified that she met

10  with Stephanie to review the options available to her under Larry's pension plan after Larry's

11  body was discovered.[94]  During cross examination, Pritchett's trial counsel asked Peterson if she

12  had "been advised by anybody that Stephanie Thomas pled guilty to [Larry's] murder."[95]

13  Peterson answered "yes," but the prosecution objected to the question and asked for a bench

14  conference.[96]  At that conference, both sides argued about whether the evidence that defense

15  counsel was attempting to adduce was admissible:

16       Prosecutor:     [Defense counsel] knows that that was complete - that is not

17                       admissible, one, but now that he's brought it in, I want the indictment and as to what it is that she said she did because this jury's going to think she admitted to killing him as

18                       opposed to admitting to assisting Mr. Pritchett in killing him.  That was completely inadmissible.  What could be the

19                       basis for the admission of her plea of guilty to murder?

20  _____

   that he had created to show the location of the cell towers used by the defendants' cell phones

21  constituted lay testimony.").

   [93] ECF No. 42 at 25.

22     [94] ECF No. 19-2 at 72–73.

23     [95] *Id.* at 79.

   [96] *Id.*

| | | |
|---|---|---|
| Defense counsel: | Your Honor, the information she was provided to come in today to testify goes to, I think, her bias and the way she is portraying this and that's why I inquired about what information she was told about the situation. | |

Prosecutor:        Well, she was subpoenaed for both Stephanie Thomas and Shawn Pritchett when she was up there.  We had to tell her she was only testifying against Shawn Pritchett, so you knew that's not admissible.  Her plea wasn't admissible, and now that's in front of this jury.  The only correction to that is what exactly she said she did.

Defense counsel:   It's certainly our position to do that, pleading guilty to second degree murder, is admissible in this trial.  This is going to be our position.

Prosecutor:        Well, then I have a little redirect.

The Court:         Okay.  Okay.
                   . . .

Defense counsel:   So we can admit the guilty plea agreement as well?

Prosecutor:        Sure, guilty plea agreement and indictment.

Defense counsel:   Thank you.

The Court:         Okay.  So we'll go with that later.  Go on.  Continue cross.[97]

Following the bench conference and during the prosecution's redirect examination, Peterson testified that she did not know what charges Stephanie pled guilty to.[98]  The prosecutor then asked, "[s]o you weren't told that she pled guilty to assisting Mr. Pritchett in killing Larry Thomas?"[99]  Peterson responded, "[n]o, I had no idea what she had pled guilty to."[100]

---

[97] *Id.* at 79–80.

[98] *Id.* at 81.

[99] *Id.*

[100] *Id.*

Later, Pritchett's trial counsel unsuccessfully argued that because the prosecution suggested to the jury that Stephanie had pled guilty to assisting Pritchett with murdering Larry, he should be permitted to rebut that line of questioning:

| | |
|---|---|
| Defense counsel: | And now that the State has elicited the – or now that the State had—the minute [the prosecutor] went back and redirected and said, well, isn't it true she's a coconspirator, something to that effect, he implicated the fact that she— |
| The Court: | He said she pled guilty to assisting Mr. Pritchett.  That was the quote from the transcript you read. |
| Defense counsel: | Okay.  And we can't rebut that?  I mean - - |
| The Court: | That was brought out because you elicited the fact that she - - or said in a context of a question that she pled guilty to murder. |
| Defense counsel: | But, Your Honor, it would be our position that we are then entitled to rebut - - |
| The Court: | Because they got to clarify your question that you now get to go on and expand it further down an irrelevant road? |
| Defense counsel: | We absolutely get to clarify it.  That is our respectful position.  We - - we absolutely get to tell this jury why she would implicate Mr. Pritchett.  If we're not allowed to do that, how can we affectively defend him? . . . We have to be allowed to put that in context.  If that's hanging out there to the jury, how does he get a fair trial without us being able to say, ladies and - - |
| The Court: | Well, then why did you bring it out? |
| Defense counsel: | It was consistent with the theory of our defense. |
| The Court: | The whole subject only came up because of what the defense brought out. |
| Defense counsel: | Well, all the more reason then that we will not be doing our job if that is disallowed.  The only way we can - - the only way we can defend this at this point is to attack that - - that statement that he aided and abetted and he was a coconspirator . . . |

24

| The Court: | And she's still not testifying.  The only one trying to bring her information in is you. |
|---|---|
| Defense counsel: | And, Judge, I respectfully would submit that it's consistent with the theory of our defense and we are entitled to present that defense.  He has the rest of his life hanging in the balance.  I would -- I would implore the – |
| The Court: | You present the defense that she did it and he didn't.  Why does that require bringing in what her negotiations were when she's not testifying? |
| Defense counsel: | Well, then what do we do about [the prosecutor's] question that now must go unrebutted? |
| The Court: | The question isn't evidence and it was in response to your question to clarify the misimpression left by your question. |
| Defense counsel: | I don't see how we -- I don't see how we can fairly defend this case if we can't -- if we cannot address that.  If we can't put that in context, how -- you know, a jury is not going -- you know, that's one hell of an excuse me.  That is one gigantic bell to unring.[101] |

Five years later, during the post-conviction evidentiary hearing, Pritchett's second-chair

trial counsel testified that the question about Stephanie's guilt was asked to Peterson "[i]n an

effort to be able to introduce the fact that the wife of the decedent had pled guilty to [Larry's]

murder" without having to call Stephanie to testify, which could have done more harm than

good.[102]  He explained that "the overall defense strategy was to establish that Mr. Pritchett was

guilty of accessory after the fact but that he was not the one involved in the murder and that the

wife was," and, by asking Peterson questions about her knowledge of Stephanie's guilt, "we

---

[101] ECF No. 20 at 70–73.

[102] ECF No. 23-7 at 16.

25

were trying to establish the wife as having been involved in the murder with the incentive to get a significantly reduced plea agreement by trying to implicate" Pritchett.[103]

Similarly, Pritchett's first-chair trial counsel testified that it was the defense's strategy to present "an accessory after the fact defense" by arguing that "Mr. Pritchett wasn't involved in the killing but that out of a loyalty to his new lover Stephanie Thomas that he helped her try and get away with the crime by helping dispose of the body, disposing of the truck, and disposing of the jewelry."[104]  He explained that he was "terrified" at the prospect of the prosecution not calling Stephanie as a witness because it "was going to preclude [him] from putting in a significant portion of what [he] wanted to present as the defense," so the defense was "trying to . . . thread the needle and just try to get [the information about Stephanie's guilty plea] in front of the jury in the least damaging way possible."[105]  He also noted that the jury was given an instruction that Stephanie's guilty plea could only be used to establish her guilt—not Pritchett's—and that "was exactly what [his] hope was[;] to get Ms. Thomas'[s] guilty plea out there without implicating Mr. Pritchett."[106]

> **b.    *The Supreme Court of Nevada's decision denying Pritchett relief on this ground was a reasonable application of <u>Strickland</u>'s performance prong.***

In affirming the denial of Pritchett's state post-conviction petition, the Nevada Supreme Court found that Pritchett's trial counsel's actions were the result of a strategic decision and Pritchett failed to demonstrate prejudice due to the overwhelming evidence of his guilt:

> Pritchett first argues that counsel should not have opened the door to evidence of his coperpetrator's guilty plea.  During the trial and the postconviction evidentiary

---

[103] *Id.* at 17.

[104] *Id.* at 52.

[105] *Id.* at 53–54.

[106] *Id.* at 54.

hearing, trial counsel discussed their trial strategy, in light of the considerable evidence against Pritchett, to stress the coperpetrator's involvement to suggest that Pritchett was merely an accessory after the fact and not a direct participant in Larry Thomas's murder. The district court found that this was counsel's tactical decision.  Substantial evidence supports these findings, and we conclude that Pritchett has not shown that the district court's findings are not entitled to deference or that trial counsel's tactical decision fell below an objective standard of reasonableness, *see Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) ("[T]rial counsel's strategic or tactical decisions will be virtually unchallengeable absent extraordinary circumstances." (internal quotation marks omitted)). Further, as we determined on appeal, overwhelming evidence supports Pritchett's guilt, *Pritchett v. State*, Docket No. 57291 (Order of Affirmance, May 10, 2012), and Pritchett therefore failed to show prejudice.  Accordingly, we conclude that the district court did not err in denying this claim.[107]

The Nevada Supreme Court reasonably concluded that Pritchett's trial counsel's actions in cross-examining Peterson about her knowledge of Stephanie's guilt did not amount to deficient performance.  Indeed, as the Nevada Supreme Court reasonably noted, Pritchett's trial counsel made a sound tactical decision to pursue this line of questioning.[108]  As Pritchett's trial counsel testified at the post-conviction evidentiary hearing, the defense strategy was to argue that Stephanie killed Larry, and Pritchett merely assisted her after the fact.  To support this defense, Pritchett's trial counsel needed to present evidence of Stephanie's involvement in the murder, and because the prosecution was not going to be calling Stephanie as a witness and calling Stephanie as a defense witness was too risky, it was reasonable for Pritchett's trial counsel to introduce evidence of Stephanie's guilt through Peterson.

It is true that this line of questioning opened the door for the prosecution to then clarify that Stephanie was not convicted of murdering Larry; she was convicted only of assisting

---

[107] ECF No. 23-12 at 3.

[108] *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *see also Correll v. Ryan*, 539 F.3d 938, 948 (9th Cir. 2008) ("[U]nder *Strickland*, we must defer to trial counsel's strategic decisions.").

1  Pritchett in murdering Larry, a fact that was detrimental to the defense and that the defense was

2  unable to rebut through evidence that Stephanie may have implicated Pritchett only to benefit

3  herself.  However, that the prosecution was able to clarify Stephanie's conviction does not make

4  Pritchett's trial counsel's actions objectively unreasonable.  Suggesting Stephanie's guilt in this

5  manner was a reasonable attempt to attach blame onto Stephanie, and if the defense didn't ask

6  Peterson these questions, the defense theory of the case would have been left wholly

7  unsupported.  So while Pritchett's trial counsel's actions were not exclusively favorable, they

8  were reasonable under the facts of the case.[109]  I thus find that the Nevada Supreme Court's

9  determination that Pritchett's trial counsel's actions did not fall below an objective standard of

10  reasonableness constituted an objectively reasonable application of *Strickland*'s performance

11  prong.  Pritchett is denied habeas relief for ground 1(f).

12  **D.     Ground 3—trial court allowed prior-bad-act evidence**

13          In ground 3 of his third-amended petition, Pritchett alleges that he was denied his right to

14  a fair trial when the trial court allowed prior bad act evidence—namely, evidence that Pritchett

15  was having an affair with Stephanie and was incarcerated before trial—to be admitted in

16  violation of his Fifth, Sixth, and Fourteenth Amendment rights.[110]  "A habeas petitioner bears a

17  heavy burden in showing a due process violation based on an evidentiary decision."[111]  "Claims

18

19

---

20  [109] *Richter*, 562 U.S. at 106 ("Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."); *see also*

21  *Strickland*, 466 U.S. at 688-89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range

22  of legitimate decisions regarding how best to represent a criminal defendant.").

    [110] ECF No. 42 at 43.

23  [111] *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005).

deal[ing] with admission of evidence" are "issue[s] of state law,"[112] and "federal habeas corpus relief does not lie for errors of state law."[113]  Therefore, the issue before this court is "whether the state proceedings satisfied due process."[114]  In order for the admission of evidence to provide a basis for habeas relief, the evidence must have "rendered the trial fundamentally unfair in violation of due process."[115]  Not only must there be "*no* permissible inference the jury may draw from the evidence," but also the evidence must "be of such quality as necessarily prevents a fair trial."[116]

### 1.   *Admitting evidence of Pritchett's extramarital affair didn't violate his due-process rights.*

At trial, Cassandra Contreras, one of Stephanie's former coworkers, described the relationship between Pritchett and Stephanie as "very friendly."[117]  Dale Baker, Jr., one of Pritchett's drinking buddies, testified that Pritchett had told him that he was "dating a married woman and that her husband was an unruly sort."[118]  Baker also supplied information that identified the married couple as Stephanie and Larry.[119]

The Supreme Court of Nevada found that the admission of this evidence was proper under Nevada law:

---

[112] *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

[113] *Lewis v. Jeffers*, 497 U.S. 764 (1990).

[114] *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991).

[115] *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

[116] *Jammal*, 926 F.2d at 920 (citation omitted).

[117] ECF No. 19-2 at 44.

[118] *Id.* at 119–20.

[119] *Id.*

1
2
3
4
5
6
7
8
9
10

Pritchett contends that the district court erred by admitting testimony that he was involved in an extra-marital affair with the victim's wife because this testimony was prejudicial evidence of an uncharged bad act and the district court did not conduct a hearing pursuant to *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), or provide the jury with a limiting instruction.  We disagree.  We review the district court's decision to admit evidence of other bad acts for an abuse of discretion and will not reverse that decision absent manifest error.  *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 676 (2006).  Although the district court failed to conduct a *Petrocelli* hearing, we conclude that allowing the State to proffer this evidence was not manifestly wrong and reversal is not warranted because the evidence was admissible under the test announced in *Tinch v. State*, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997) *modified by Bigpond v. State*, 128 Nev. ___, ___, 270 P.3d 1244, 1249-50 (2012).  First, the affair was relevant because it demonstrated Pritchett's motive for the killing and helped explain why Pritchett and the victim's wife would conspire.  Second, the affair was clearly and convincingly proven by statements Pritchett made to several witnesses.  Finally, the probative value of explaining why Pritchett would kill a man who had befriended him and let him live in his home outweighed the danger, if any, of unfair prejudice resulting from the jury learning of the affair.

11
12
13
14
15

As to the lack of a limiting instruction, we ask "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Here, Pritchett told several people that he wanted to kill the victim.  His guilt is supported by the cellular phone site data, pawn shop sales, and various pieces of the victim's vehicle which were traced back to Pritchett.  Because the issue of guilt in this case is not close and overwhelming evidence supported the jury's verdict, we conclude that the lack of a limiting instruction was harmless error.

16
17
18
19
20
21
22

The introduction of evidence that Pritchett was having an affair with Stephanie was detrimental to Pritchett because it showed that he was possibly a morally depraved individual.  But I cannot conclude that the admission of this evidence rendered Pritchett's trial fundamentally unfair.  As the Nevada Supreme Court reasonably noted, this evidence was admissible under Nevada law because it was relevant to show motive, it was proven by clear and convincing evidence, and its probative value outweighed any danger of unfair prejudice.[120]  Indeed, because

23

---

[120] *See Bigpond v. State*, 270 P.3d 1244, 1250 (Nev. 2012) (explaining that "[i]n order to overcome the presumption of inadmissibility, the prosecutor must . . . establish that: (1) the prior bad act is relevant to the crime changed and for a purpose other than proving the defendant's

1  the evidence that Pritchett was having an affair with Larry's wife explained why Pritchett wanted

2  to kill Larry, the jury was able to draw a permissible inference from the evidence.

3         "Under AEDPA, even clearly erroneous admissions of evidence that render a trial

4  fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by

5  'clearly established Federal law,' as laid out by the Supreme Court."[121] And importantly, the

6  Supreme Court "has not yet made a ruling that admission of irrelevant or overtly prejudicial

7  evidence constitutes a due process violation sufficient to warrant issuance of the writ."[122]  So

8  even if I found that admission of this evidence was erroneous, I could not grant federal habeas

9  relief on that basis.

10

11
### 2.    Allowing the prosecution to introduce evidence of Pritchett's pretrial incarceration didn't violate his due-process rights.

12         Detective Condratovich testified at trial that Pritchett was arrested and then booked into

13  the Clark County Detention Center.[123]  Detective Condratovich then testified that he listened to a

14  phone call between Pritchett and one of Larry and Stephanie's children, Nicole, that was

15  recorded by the Clark County Detention Center.[124]  During that phone call, Pritchett asked

16  Nicole to "get rid of jewelry or jewelry boxes that may be left under the seat" in his truck.[125]

17

18

19  propensity, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice").

20  [121] *Yarborough*, 568 F.3d at 1101 (citing 28 U.S.C. § 2254(d)); *see also Dowling v. United States*, 493 U.S. 342, 352 (1990) (explaining that the Supreme Court has "defined the category of

21  infractions that violate 'fundamental fairness' very narrowly").

22  [122] *Id.*

    [123] ECF No. 21-2 at 126.

23  [124] *Id.*

    [125] *Id.* at 130.

The Supreme Court of Nevada held that while introduction of this evidence was improper, the error was harmless when compared to the overwhelming evidence of Pritchett's guilt:

> Pritchett argues that the district court erred by admitting testimony and a phone call that indicated that he was incarcerated. Mentioning that Pritchett was incarcerated and eliciting that information from the detective was improper. *McNelton v. State*, 115 Nev. 396, 407, 990 P.2d 1263, 1270 (1999). Informing the jury that a defendant is in jail raises an "inference of guilt" and can be severely prejudicial. *Id.* (internal quotation marks omitted) (quoting *Haywood v. State*, 107 Nev. 285, 288, 809 P.2d 1272, 1273 (1991)). However, we have held this error harmless when overwhelming evidence of guilt is produced at trial. *Haywood*, 107 Nev. at 288, 809 P.2d at 1273. In the instant case, Pritchett told several people that he wanted to kill the victim. Pritchett's phone records revealed that on the night the victim went missing he drove to the area where the body was eventually discovered. The motor and steering column from the victim's truck were both found by police. Pritchett had sold the motor to a man in Oregon and given a friend the steering column. Several of the victim's rings had been pawned by Pritchett. And Pritchett instructed the victim's daughter to remove jewelry boxes from his truck and throw them in a separate trash can. We conclude that in light of the overwhelming evidence of guilt produced at trial, the jury being told that Pritchett had been incarcerated did not unfairly prejudice him.[126]

Pritchett fails to demonstrate that the evidence of his pre-trial incarceration was so detrimental that it deprived him of a fundamentally fair trial. As the Supreme Court of Nevada reasonably held, the evidence of Pritchett's guilt was overwhelming, rendering this error comparatively insignificant.[127]  And as noted supra, this court cannot grant habeas relief on challenges to the introduction of irrelevant or overtly prejudicial evidence, as there is no clearly established law permitting it to do so. So I find that Pritchett is not entitled to habeas relief for ground 3.

---

[126] ECF No. 22-15 at 2–4.

[127] *See Chapman v. California*, 386 U.S. 18, 22 (1967) ("We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless.").

**E.     Ground 5—trial court improperly denied Pritchett's <u>Batson</u> challenge**

In ground 5, Pritchett alleges that the trial court's denial of his *Batson* challenge violated his Fifth, Sixth, and Fourteenth Amendment rights.[128]  The use of a peremptory challenge to remove a prospective juror because of race violates the federal constitution.[129]  Under *Batson v. Kentucky*[130] and its progeny, consideration of a defendant's challenge to a peremptory strike involves a three-step analysis:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecution to present a race-neutral explanation for striking the juror in question. . . . Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.[131]

"[T]he critical question in determining whether a [petitioner] has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike."[132]  This issue comes down to credibility, and "[c]redibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy."[133]

---

[128] ECF No. 42 at 48.

[129] *See J.E.B. v. Alabama ex. rel. T.B.*, 511 U.S. 127, 129 (1994); *Powers v. Ohio*, 499 U.S. 400, 409 (1991).

[130] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[131] *Rice v. Collins*, 546 U.S. 333, 338 (2006).

[132] *Miller-El*, 537 U.S. at 338–39.

[133] *Id.* at 339.

***1.*** ***The trial court denied Pritchett's <u>Batson</u> challenge, and the Supreme Court of Nevada affirmed.***

During voir dire at Pritchett's trial, prospective juror Ms. Cross testified that she used to be a rape-crisis counselor, had an undergraduate degree in sociology, and was previously the Chief Executive Officer of an educational nonprofit.[134]  Her husband was a psychology professor, and her daughter worked as a psychotherapist.[135]  When the prosecution asked if there was anything that she thought "would be important to tell" the court, she responded: "Well, I think I might have some trouble looking at those photographs you referred to, you know.  So, that could be a problem."[136]  The prosecution noted that several "disturbing" photos would be shown to the jury in this case and asked if she would be able to look at them.[137]  The prospective juror reiterated that she didn't know whether she could handle seeing "gratuitous violence" that may be on display.[138]  The prosecution moved to dismiss Ms. Cross for cause and, after a short bench conference, defense counsel asked if she would be able to look at the evidence long enough to adequately deliberate, and she responded that she thought she could if it was only a "small number" of photographs for a "short period of time."[139]  The trial court denied the prosecution's motion for cause, and the prosecution then used one of their peremptory challenges to strike Ms. Cross.[140]

---

[134] ECF No. 18 at 149–150.

[135] *Id.* at 151.

[136] *Id.* at 155.

[137] *Id.*

[138] *Id.*

[139] *Id.* at 159.

[140] *Id.* at 159; ECF No. 18-2 at 155.

The defense made a *Batson* challenge to the prosecution's peremptory strike.[141]  The trial court noted that the prosecution "struck two of the three African-Americans on the panel."[142]  The trial court then "assume[d] for a moment that [the defense made] a prima facie showing" of discrimination and asked the prosecution for their "legitimate non-discriminatory reasons" for striking Ms. Cross.[143]  The prosecution stated that it struck Ms. Cross because "she said she wouldn't look at the crime scene photographs," and that she had  "a BA in sociology and her husband is a professor of psychiatry and psychology."  He noted that it's "a habit of prosecutors . . . that [people with those] type[s] of background[s] . . . shouldn't stay on the jury."[144]  The trial court denied the *Batson* challenge because the prosecution presented legitimate non-discriminatory reasons for striking Ms. Cross:

> I hesitated on the prima facie really because it wasn't a complete elimination of African-Americans from the jury.  It's two out of three.  And the reason I went forward is because I'd rather hear about it than resolve it based on the prima facie issue.  So, I'm going to -- I mean I'll find just based on the challenge and two out of the three that there was a prima facie showing.  But based on the legitimate non-discriminatory reasons presented by the prosecution which do fit in with my recollection of the answers that they gave during the course of voir dire questioning and they were some unique situations, I do not find that these people were eliminated based on race and so I'm denying the *Batson* challenge.[145]

The Supreme Court of Nevada held that the prosecution's reasons for exercising a peremptory challenge on Ms. Cross were race-neutral and not pretextual:

> Pritchett contends that the district court erred in denying his *Batson* challenge to a peremptory strike based on racial discrimination.  We disagree.  We use a three-pronged test for determining whether illegal discrimination has occurred.  *See Diomampo v. State*, 124 Nev. 414, 422, 185 P.3d 1031, 1036 (2008) . . . .  First,

---

[141] ECF 18-2 at 155.

[142] *Id*. at 156.

[143] *Id*.

[144] *Id*. at 156–57.

[145] *Id*. at 158.

the district court found that there was a prima facie case of racial discrimination. Second, the district court found that the State had given legitimate non-discriminatory reasons for their challenge. Namely, the State explained that prospective juror number 17 stated that she would not look at the crime scene photos until she was pressed by the defense counsel. Further, the State claimed to regularly strike jurors who have a familiarity with psychology. Here, juror number 17 had a related degree and her husband was a psychology professor. Finally, the district court found that the potential juror was not eliminated based on race. We conclude that these explanations for exercising the State's peremptory challenge were race-neutral, and Pritchett has not demonstrated that those explanations were pretext for racial discrimination. *See Hawkins v. State*, 256 P.3d 965, 967 (2011). Therefore, the district court did not err by rejecting Pritchett's *Batson* challenge.[146]

### 2.   The Nevada Supreme Court reasonably determined that Pritchett's <u>Batson</u> challenge failed.

The Nevada Supreme Court applied the three-step *Batson* test and reasonably determined that the prosecution provided a race-neutral explanation for using its peremptory challenge on Ms. Cross and that the trial court properly rejected the challenge. Pritchett opposes the prosecution's race-neutral explanation, arguing that the prosecution's reasons for striking Ms. Cross were pretextual.[147] Although Ms. Cross gave several answers during voir dire demonstrating that she could be a fair and impartial juror, she also explained that she had a sociology background, demonstrating that she possessed heightened insight into human behavior. This background could be associated with a pro-defendant perspective.[148] Moreover, Ms. Cross was hesitant when asked if she could look at the crime-scene photographs. Given these circumstances, Pritchett fails to support his purposeful-discrimination claim. Because the Nevada Supreme Court's determination denying Pritchett relief constituted an objectively

---

[146] ECF No. 22-15 at 5–6 (cleaned up).

[147] ECF No. 110 at 48.

[148] *See United States v. Thompson*, 827 F.2d 1254, 1260 (1987) ("Excluding jurors because of their profession . . . is wholly within the prosecutor's prerogative.").

1   reasonable application of *Batson* and was not based on an unreasonable determination of the

2   facts, Pritchett is not entitled to federal habeas relief for ground 5.

3   **F.      A certificate of appealability is denied.**

4          The right to appeal from the district court's denial of a federal habeas petition requires a

5   certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial

6   showing of the denial of a constitutional right."[149]  "Where a district court has rejected the

7   constitutional claims on the merits," that showing "is straightforward: The petitioner must

8   demonstrate that reasonable jurists would find the district court's assessment of the constitutional

9   claims debatable or wrong."[150]  Applying these standards, I find that a certificate of appealability

10  is unwarranted.

11                                    **Conclusion**

12         IT IS THEREFORE ORDERED that the third-amended petition **[ECF No. 42] is**

13  **DENIED**, and because reasonable jurists would not find my decision to deny the third-amended

14  petition to be debatable or wrong, a **certificate of appealability is DENIED**.

15         Pritchett's request for an evidentiary hearing[151] is **DENIED**.  Pritchett fails to

16  demonstrate that he is entitled to an evidentiary hearing and neither further factual development

17  nor any evidence that may be proffered at an evidentiary hearing would affect my reasons for

18  denying relief.[152]

19

20

21  ───────────────

    [149] 28 U.S.C. § 2253(c).

22  [150] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

23  [151] ECF No. 42 at 58.

    [152] 28 U.S.C. § 2254(e)(2); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

**The Clerk of Court is directed to substitute Ronald Oliver as a respondent for Respondent Warden Gentry under Federal Rule of Civil Procedure 25(d)**, as the state corrections department's inmate-locator page states that Pritchett is incarcerated at Southern Desert Correctional Center, and Ronald Oliver is the warden for that facility.

**The Clerk of Court is further directed to** ENTER JUDGMENT accordingly and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
May 13, 2024

38